29376. CITIZENS BANK OF CAIRO *v.* J. L. PILCHER & SONS INC.

DECIDED MAY 21, 1942.

*R. A. Bell,* for plaintiff.
*Roy Segler, Jesse J. Gainey,* for defendant.

MacIntyre, J. (After stating the foregoing facts.) Before the act approved July 15, 1924 (Ga. L. 1924, p. 125; Code, § 67-1101) there could be no mortgage on a crop until it was planted. *Dawson National Bank* v. *Bank of Dawson,* 42 *Ga. App.* 300, 302 (155 S. E. 791). However, this Code section provides as follows: "A mortgage given to secure advances for the purpose of making and gathering crops shall embrace and cover crops of such mortgagor before the same are planted or growing, when it is so stipulated therein, within the limit of the calendar year such crops may be planted." The Code, § 67-1105, provides, "Where advances either of money or supplies or both are made for the purpose of planting, cultivating, making, or harvesting a crop or crops, the borrower or person to whom such money or supplies shall be fur-

nished may secure the same by a bill of sale to secure debt under section 67-1301, covering the crop or crops to be grown by him within 12 months from the date of such bill of sale, although such crop or crops may not be planted or growing at the time of the execution of such bill of sale: Provided, that the crop or crops shall be described in said bill of sale with the same particularity as the laws require for a crop mortgage, and the amount of said advances in money or supplies shall be definitely stated and fixed therein." Even if we say the words "the same particularity as the laws require for a crop mortgage" in the latter section do not refer to the particular kind of crop mortgage referred to in the former section, although both sections are in chapter 67 of the Code and this chapter discusses only liens on crop mortgages and bills of sale as they relate to crops grown within twelve months from the date of such instruments, but on the contrary say that these words refer to the general crop mortgage discussed in a different chapter in the Code, yet, how can the bill of sale for a crop mortgage be brought within the Code, § 67-1105, unless the amount of advances in money for the purpose of making and gathering the crop in question be "definitely stated and fixed therein"? Definitely fixed where? We reply, in the instrument itself, not by extraneous testimony. And how can it be definitely fixed in the instrument itself unless it is stipulated therein how much—whether all or part of the money—was advanced in the making and gathering of the crop grown within twelve months from the date of the instrument? Thus, in order for the vendee in the bill of sale to bring himself within the provisions of § 67-1105, he must state therein, that is, in the bill of sale itself, that all, and if not all what part, of the advances were used in making and gathering the crop. The bill of sale in question does none of these things, and we do not think it comes under the provisions of § 67-1105. It was not constructive notice to an innocent third party.

The court did not err in holding that the plaintiff's bill of sale was inadmissible as evidence to show title to the cotton crop in question as against the defendant, an innocent third party in respect to the bill of sale, and in thereafter granting a nonsuit.

*Judgment affirmed. Broyles, C. J., concurs.*

GARDNER, J., dissenting. I can not agree to the majority opinion. It will be noticed that the Code, § 67-1101 (Ga. Laws 1924,

p. 125), makes no mention that the *amount* be specified. Before 1924 the law did not permit mortgages to be taken on crops before they were planted, but they were taken after the crops were up and growing, for the purpose of securing advances and supplies for making the crops. Certain priorities were provided by statute. To any one who is familiar with the practice which prevailed in taking mortgages on growing crops to secure advances for supplies it is recognized that it was the custom of the lender (bank or supply merchant) to take a mortgage for a nominal sum and provide that it secured any future advances of money and supplies for the purpose of making the crop. Such an instrument gave the lender a priority as to a lien on the crop inferior only to certain designated prior liens (such as a lien for rent, and supplies furnished by a landowner). Oftentimes a farmer was in need of funds for the purpose of securing fertilizer, seed, and the like, before the crop was up and growing sufficiently to constitute a subject-matter of a loan; therefore, to assist the farmer during the period of preparing his land and planting his crop, the legislature passed the act of 1924 (Code § 67-1101). The practice which theretofore prevailed of taking a "blanket mortgage" and not specifying an amount to be advanced was continued under the provisions of the act of 1924 covering crops before planting. Such practice worked a great hardship on the farmer. There was no definite amount stated in the crop mortgage that the farmer had signed covering money borrowed and which would be a lien on his crop. Oftentimes the lender who took the crop mortgage, for reasons satisfactory to himself, would not advance sufficient funds under the blanket mortgage to complete the cultivation and gathering of the crop. The farmer could not very well secure additional aid from other sources for the very pertinent reason that no definite *amount* was specified in the instrument evidencing the crop mortgage. Hence we think it was to cure this evil, and one other which we will discuss hereinafter, that the legislature in 1925 and 1926 passed the acts (Code § 67-1105) with reference to legalizing the taking of bills of sale on crops before they are planted. The latter act provided: (1) The instrument may secure advances for money or supplies for making unplanted crops within twelve months from the date of the bill of sale. (2) "Crop or crops shall be described in said bill of sale with the same particularity as the laws require

for a crop mortgage." (3) The *amount* of said advances in money or supplies *shall be definitely stated and fixed.* (4) "Bill of sale shall pass title, . . and shall not be construed to be a mortgage." (5) Fixes priorities specified in the act.

It must be kept in mind that the only instance in which a valid bill of sale can be given on an unplanted crop is for advances to make it. If this be true, is it not mere surplusage to state in the instrument itself that such is the purpose? If the crop is up and growing a bill of sale or mortgage may be given for any purpose, but to have certain priorities the statute says the instrument must contain the provision that the advancement was for the purpose of securing supplies. If the crops are not planted the only purpose for which a bill of sale can be given is for advances to plant and cultivate and gather. The instrument was executed on January 25, 1940, it was recorded the following day, the property (tobacco, cotton, Spanish peanuts, runner peanuts, and corn) was specifically described, and the amount secured was definite as required by the statute, $402.57. It can hardly be contended that the crops were planted and growing. This statute is in derogation of the common law and must be strictly construed. The writer does not think this court is authorized to read into the statute that which it does not contain. As stated, we think the intention of the legislature in passing this statute was to put third parties on notice as to the amount advanced. This would enable the farmer, if such amount was insufficient, to go elsewhere and execute an additional instrument for further financing. Secondly, it is reasonable to suppose that the legislature provided that a bill of sale instead of a mortgage might be given on an unplanted crop in order that the title could pass under the bill of sale and be superior to certain other statutory claims, year's support and the like. This likewise would inure to the benefit of the farmer because he could more easily obtain additional advances before his crop was planted by having the authority of law to execute an additional instrument for further financing. I can not see any good reason to hold that a bill of sale executed under the statute in question would have to contain, to make it valid as against third persons, the stipulation that it was executed for supplies and advances for planting, cultivating, and gathering the crop. To read this into the statute we would have to assume that the definite amount of

$402.57 was not for advances for the purpose of making the crop (the only purpose for which the statute provides that it may be executed on an unplanted crop). If not made for this purpose, as to third persons it would be fraudulent and void. This would be a matter of defense. It is not so much as to what the instrument stipulated it was for that makes it valid; it is whether the $402.57 was advanced for such purpose. If it was not advanced for such purpose it would not matter whether the instrument said it was for advances or not. The writing of the purpose in the instrument could not make it such an advancement or give it such priority of lien as the statute intended touching an unplanted crop. It seems to me that the reasoning could work as well the other way around. If the money was advanced for the purpose of making the crop, and the amount was definite, and the bill of sale complied with all the plain express requirements of the statute, as is the case with the instrument before us, then why would it not be permissible to prove that the definite amount specified in the instrument was advanced for such purpose? The writer thinks that the defendant in error was on notice. It is no answer to say that because one legislature in 1924 wrote into an act with reference to a mortgage given on an unplanted crop for an advancement that the purpose should be stated, and a subsequent legislature did not see "eye to eye" as to the necessity of writing such stipulation in a bill of sale, that the bill of sale is ineffectual unless the same feature is written in the bill of sale as to an unplanted crop.

In my opinion the court erred in not permitting the plaintiff in error to introduce the instrument itself, and oral testimony to sustain the position that the amount in question was advanced for the purpose of planting, cultivating, making, and gathering the crop.